COUNTY COURT—ERIE COUNTY,

Nov. 1910.

# THE PEOPLE v. SIGMOND BOCK ET AL.

(69 Misc. 543.)

PENAL LAW SECTION 380—BRIBERY OF LABOR REPRESENTATIVE—EVIDENCE NECESSARY FOR CONVICTION.

From the payment of money under circumstances of great secrecy to a representative of a labor union for the purpose of inducing him to resign as an officer of the union and immediately thereafter to enter the employ of the person making the payment in hostility to the union to help break a pending strike, the court may infer the wrongful giving of money to such person, while he was a representative of the union to induce him to help break up the strike, in violation of the prohibition of section 380 of the Penal Law.

APPEAL from a conviction in the City Court of Buffalo.

*Louis E. Desbecker,* for appellants.

*Wesley C. Dudley, District Attorney (Clifford McLaughlin, of counsel),* for respondent.

TAYLOR, J.:

The appellants have been convicted in the City Court of Buffalo of having violated section 380 of the Penal Law of this State. That section reads, in part, and in so far as the case at bar is concerned, as follows: " A person who gives or offers to give any money or other things of value to any duly appointed representative of a labor organization with intent to influence him in respect to any of his acts, decisions, or other duties as such representative * * * is guilty of a misdemeanor."

Testimony was given on the trial sufficient to warrant a conclusion by the trial judge that $50 in money, as part of an aggregate payment of $500, was given by the appellants to one Adamski, an admitted representative of a labor union, for the purpose of inducing him to resign as an officer of the union and immediately thereafter to enter the employ of the appellants in hostility to the union, to help break a pending strike, and that this occurred around midnight, at a rendez-vous suggested by appellants, to which they had taken Adamski in a closed carriage. Considerable testimony was offered, pro and con, but this decision must turn on the following question, namely: was the above mentioned act one done within the contemplation of the statute, with the intent of influencing Adamski in respect to any of his acts, decisions or other duties as a representative of a labor organization?

The appellants claim that Adamski's resigning as a union representative was a purely personal act; that it was not an act as a representative of the labor organization; and, neces-sarily, Adamski having been given money so to do, that his resigning as such representative and then going to work in the interest of the appellants to help break up the strike, an interest, I must assume, adverse to those of the union, was not in the aggregate a violation of any duty to the union under the statute. If the appellants be wrong in this conten-tion, then it was the expressed intention of the Legislature, when enacting said section 380, to prohibit a third party, while a strike of his employees be on, from giving to a repre-sentative of a labor union, which is back of such strike, money to do work for him hostile to the union at a time to begin im-mediately after the resignation of such union representative from his said position. And this even though such third party, having interests at stake adverse to the union and in process of attempted adjustment, made the resignation of such officer a prerequisite to the going into effect of such new contract of

employment. In other words, that the Legislature intended to prevent these appellants from hiring a union representative to resign and immediately thereafter to go into their employ in hostility to the interests of the union.

The district attorney argues that the method adopted by the appellants was either only an ingenious attempt to get around the statute or the accomplishment of the ends of the appellants by means now claimed by them not to be unlawful, but really within the fair prohibitory intendment of the law.

This statute, so far as I am able to ascertain, has not hitherto received judicial construction. The argument of the appellants' learned and able counsel is earnest and impressive. However, it falls short of convincing me that this judgment should be reversed for this reason:

Supposing that all the other circumstances hereinbefore recited remain as they are, if these appellants stood accused merely of having hired Adamski to resign from his representative position in the union, or of having hired him to go into their employ even in hostility to the union's interests after he had voluntarily resigned, it is probable that no crime would have been committed; but the trial judge was justified in concluding that the real and wrongful act done by the appellants was giving money to Adamski *while he was a representative of the union* to induce him to help break up the strike; and that the arrangement about the preliminary resignation was merely an incident, if not devised by the appellants to furnish them, at least now erroneously resorted to as furnishing them, a safeguard against punishment, because it removed Adamski from his position as a labor representative before he became actively engaged in the employ of the appellants. I agree with the court below that this whole transaction by the defendants comes fairly within the prohibition of section 380.

The statute says, "gives money with intent to influence him (the union representative) in respect to any of his acts, or other duties as such representative." Paying money to Adamski to "turn over his people" to the appellants, to "be taught what to do," "to do such work as they (appellants) asked him to do with his fellow workmen," would surely come within the prohibition of the statute. Can it be said that coupling this act with an arrangement that Adamski should resign before any more money were paid or any of the actual work done for appellants removes the transaction from the intendment of this law? Would not an affirmative judicial answer to this question be rewarding fertility of mind rather than fairly construing this statute according to its real purport? It may not have been Adamski's duty in general to remain an officer of this union, but it strikes me that his resigning for pay at such a time to immediately go to work against his former associates would have been not only a violation of his duty, but an act of gross treachery.

Counsel for the appellants claims that sections 371, 378, 380 and 1822 of the Penal Law are all substantially the same in spirit and intendment, interdicting bribery of various officials. And he thereupon argues that, since section 1980 expressly prohibits representatives of railroad corporations from offering any position or other consideration to a public service commissioner, or his secretary, clerk, etc., this is an indication that the Legislature felt that offering a position to any of the other officials named in the various sections just enumerated should not be deemed criminal; and counsel further urges, carrying that reasoning through, as he claims, that the Legislature had no intention, when it was passing section 380, as it stands, to make the said proved acts of these appellants criminal. As to that argument I am impressed that our Legislature might well have felt that the act of offering any position, of any character and under any circum-

stances, to the officers mentioned in section 1980 (and probably comprehended now by section 378) should expressly be made criminal and did not fall fairly within the scope of section 378 or any other existing statute; while at the same time it might have been clear to our legislators that giving money to a labor representative, while he was in a union's employ, for immediately working for the giver in antagonism to the interests of the union, even though such labor representative resigned his position as such as a preliminary was so clearly within the meaning of section 380 as to need no other, different or more specific characterization as to its criminality.

Adamski's attitude in this whole affair is not worthy of entire commendation. He admits that he lied; that part of his story to the appellants "was a bluff;" that he was trying to entrap the appellants. But this is not of avail to them. Even though Adamski went further than laying a trap and actually solicited the appellants to commit crime, it would furnish no defense to them, since Adamski was not a prosecuting or other public official of any kind.

I appreciate the undesirability of being compelled to stand convicted of having committed a crime, and am firmly convinced that no man should be put into such a position unless it be clear that he has violated a statute, which, fairly and strictly construed, for that is the law, characterizes an act or omission of the accused person as criminal. Further, with a business situation like the one here shown confronting the appellants, one can readily understand how, in their zeal to terminate a strike damaging to their business interests, they may have come to act as they did and without knowledge that they were committing a crime. However, most of us know well by heart the old maxim relative to ignorance of the law; and it follows that, if these appellants did this act with the

intent stated in the statute, then ignorance cannot furnish them excuse.

And so, since I feel that the court below had fair warrant for finding that the part taken by the appellants in this transaction was as hereinbefore indicated, and that such acts bring them fairly within the prohibitory scope of said section 380, I must affirm the judgment of conviction of the City Court.

Judgment affirmed.